IN RE: STATE QUESTION No. 820 INITIATIVE PETITION No. 434

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:IN RE: STATE QUESTION No. 820 INITIATIVE PETITION No. 434

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

IN RE: STATE QUESTION No. 820 INITIATIVE PETITION No. 4342022 OK 30Case Number: 120170Decided: 03/28/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 30, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

IN RE: STATE QUESTION No. 820, INITIATIVE PETITION No. 434

JED GREEN, Petitioner/Protestant,
v.
MICHELLE DIANE TILLEY NICHOLS and MICHELLE ANNE JONES Respondents/Proponents.

ORDER

¶1 Original jurisdiction is assumed. Okla. Const. art. VII, § 4; 34 O.S.2021, § 8, https://govt.westlaw.com/okjc (follow hyperlink titled "General Provisions"); In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶ 2, 376 P.3d 250, 252. Petitioner Jed Green challenges the legal sufficiency of State Question No. 820, Initiative Petition No. 434. Upon review, we hold that State Question No. 820 is constitutionally sufficient and its gist sufficiently informs signers of its intentions for the initiative petition to be submitted to the people of Oklahoma.

¶2 On January 4, 2022, Respondents/Proponents Michelle Diane Tilley Nichols and Michelle Anne Jones filed State Question No. 820, Initiative Petition 434, seeking to add new provisions to Title 63 that would legalize, regulate, and tax adult-use marijuana. Petitioner/Protestant Jed Green filed a timely petition to challenge State Question No. 820 on January 24, 2020. See 34 O.S.2021, § 8(b). Mr. Green raises two pertinent challenges to State Question No. 820. He first argues that State Question No. 820 violates Article V, Section 57 of the Oklahoma Constitution as it embraces multiple subjects, specifically that section 15 of State Question No. 820 embraces criminal justice reform, not adult-use marijuana. Mr. Green also challenges the gist of State Question No. 820, claiming that it is misleading.

¶3 State Question No. 820 would legalize the personal use of marijuana for adults, aged 21 and over, by adding a new act to Title 63 of the Oklahoma Statutes. It would also place an excise tax of 15% on the gross receipt of marijuana sales and direct the Oklahoma Medical Marijuana Authority to regulate adult-use marijuana according to the proposed statutory requirements laid out in State Question No. 820. The gist of SQ 820 explains its proposals as follows:

This measure is intended to generally legalize, regulate and tax adult-use marijuana under state law (but not alter the rights of medical marijuana patients or licensees). Specifically, it would protect the personal use of marijuana for persons aged 21+, while establishing quantity limits, safety standards, and other restrictions and penalties for violations thereof. It would not affect an employer's ability to restrict marijuana use by employees or prevent property owners from prohibiting or restricting marijuana-related conduct on that property in most cases. It also would not affect federal law regarding marijuana. It would vest in the Oklahoma Medical Marijuana Authority the power to license and regulate conduct under the Act and administer and enforce the Act pursuant to specified requirements. Local governments could regulate the time, place, and manner of operation of businesses licensed pursuant to this Act, but not limit the number or completely prohibit such businesses. It would restrict business licenses to established medical marijuana licensees for the first two years. It would impose a 15% excise tax on sale to consumers (not applicable to medical marijuana) to fund the Authority, with the surplus directed to localities where sales occur (10%), to the General Revenue Fund (30%), to the courts (10%), to the schools (for programs to prevent substance abuse and improve student retention and performance) (30%), and to drug additional treatment programs (20%). It would provide a judicial process for people to seek modification, reversal, redesignation, or expungement of certain prior marijuana-related judgments and sentences. It would provide for severability and an effective date.

¶4 Mr. Green's challenge is governed by 34 O.S.2021, § 8, https://govt.westlaw.com/okjc (follow hyperlink titled "General Provisions"). The people of Oklahoma have a constitutional right to propose constitutional amendments and legislation by initiative petition; the right of initiative is one the Court "zealously" safeguards. In re: State Question No. 813, Initiative Petition No. 429, 2020 OK 79, ¶ 6, 476 P.3d 471, 473; In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, ¶¶ 3-4, 142 P.3d 400, 403-04. "[I]t is the duty of this Court to review the petition to ensure that it complies with the rights and restrictions established by the Oklahoma Constitution, legislative enactments, and this Court's jurisprudence." In re: State Question No. 807, Initiative Petition No. 423, 2020 OK 57, ¶ 11, 468 P.3d 383, 388. Mr. Green bears a heavy burden to establish constitutional insufficiency and any doubt "is resolved in favor of the initiative" petition. Id. ¶ 12, 468 P.3d at 388.

¶5 Initiative petitions must comply with all requirements set out in the Constitution, including Article V, § 57, or the single subject rule, which applies to proposed legislation by initiative. In re Initiative Petition No. 382, 2006 OK 45, ¶ 8, 142 P.2d at 405. If the provisions of State Question No. 820 are "germane, relative and cognate" to its common theme, the proposed legislation embraces one subject. Id. ¶ 9, 142 P.3d at 405. Mr. Green first contends that State Question No. 820 violates the single subject rule in that in concerns both adult-use marijuana and criminal justice reform, namely in section 15 which provides for retroactive application of the conduct State Question No. 820 seeks to legalize.1 State Question No. 820 embraces only one subject, adult-use marijuana. It is hard to conceive how retroactive application of the legalization of certain uses of marijuana is not germane to the legalization of marijuana. In fact, it is not only germane but directly related to adult-use marijuana as section 15 merely changes the temporal application of the proposed legislation, from prospective to retroactive.

¶6 Mr. Green next contends that State Question No. 820's gist is misleading.2 The gist of an initiative petition must be "free from the taint of misleading terms or deceitful language" and inform signers of the initiative petition of the "potential effects" so those signers understand the changes that would be made to Oklahoma's statutory code. In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, ¶ 3, 376 P.3d 250, 252 (cleaned up). "A gist must present an outline, or rough sketch, of what the initiative petition will accomplish to fully inform potential signatories." In re State Question No. 813, 2020 OK 79, ¶ 8, 476 P.3d at 473. The gist of State Question 820 informs signers of what State Question No. 820 seeks to implement by statutory change. The gist of State Question No. 820 informs signers that it seeks to legalize, regulate, and tax adult-use marijuana. It alerts signers that the state question does not impact medical marijuana rights, allows personal use of marijuana, and sets limits on the legal use of marijuana. The gist outlines that employers and landowners can restrict marijuana use and the Oklahoma Medical Marijuana Authority would administer the proposed legislative act and regulate adult-use marijuana. The gist explains the power of local governments to regulate marijuana use and sale, and the gist sets out how marijuana taxation would fund the State. Finally, the gist notes the retroactive provision to apply to conduct no longer criminalized. Mr. Green does not point out any other provisions in the initiative petition that the gist fails to outline. Therefore, State Question No. 820's gist satisfactorily informs signers of the contours of State Question No. 820.3

¶7 State Question No. 820 is legally sufficient for submission to the people of Oklahoma. Petitioner Jed Green has failed to meet his burden in establishing that State Question No. 820 is clearly or manifestly unconstitutional and that the gist of State Question No. 820 is misleading. The Court assumes original jurisdiction and denies Petitioner's challenge to the constitutionality and sufficiency of State Question No. 820.

 

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 28TH DAY OF MARCH, 2022.

/S/CHIEF JUSTICE

CONCUR: Darby, C.J., Kauger, Winchester, Edmondson, and Gurich, JJ.

CONCUR IN PART, DISSENT IN PART: Combs, Rowe (by separate writing), and Kuehn, JJ.

DISSENT: Kane, V.C.J., (by separate writing).

FOOTNOTES

1 Section 15(A) of State Question No. 820 provides:

A person currently serving a sentence for a conviction, whether by trial or plea of guilty or nolo contendere, who would not have been guilty of an offense or who would have been guilty of a lesser offense under this Act had it been in effect at the time of the offense, may file a petition for resentencing, reversal of conviction and dismissal of case, or modification of judgment and sentence before the trial court that entered the judgment of conviction in the person's case to request resentencing, modification, or reversal in accordance with this Act.

2 Mr. Green also challenges the gist as conflicting with the ballot title, but at the oral presentation before a Referee, Mr. Green conceded that he confused State Question No. 820's legislative title with the ballot title. At this stage of the proceeding, the Court only reviews the constitutionality and the gist of an initiative petition. See 34 O.S.2021, § 3; In re: Initiative Petition No. 426, State Question No. 810, 2020 OK 44, ¶ 6. A challenge to the ballot title occurs only after the proponents of an initiative petition have collected signatures, submitted those signature to the Secretary of State, and the Supreme Court has confirmed the required number of signatures. 34 O.S.2021, § 8(H).

3 Mr. Green raises a third argument against State Question No. 820, arguing that section 4, which requires the Oklahoma Medical Marijuana Authority to issue rules and regulations within 90 days, conflicts with the requirement in the Oklahoma Administrative Procedures Act, 75 O.S., § 303, to provide 30 days' notice when engaging in rulemaking. Mr. Green's third argument does not concern the constitutionality, legality, or the sufficiency of the initiative petition. 34 O.S.2021, § 8(D); In re: State Question No. 80, 2020 OK 57, ¶ 11, 468 P.3d at 387. Therefore, the Court need not address it here.

 

 

ROWE, J., concurring in part, dissenting in part:

¶1 I concur with the Court's decision to assume original jurisdiction. I must dissent, however, from the Court's holding that State Question No. 820, Initiative Petition No. 434 ("SQ 820") is constitutionally sufficient to submit to the people of Oklahoma. SQ 820 is preempted by federal law and, thus, conflicts with the Oklahoma Constitution.

¶2 The right to an initiative petition is the first power reserved for the people of Oklahoma under Article 5, § 2 of the Oklahoma Constitution.1 Our prior decisions make clear that the right of initiative is precious and warrants zealous protection. In re State Question No. 807, Initiative Petition 423, 2020 OK 57, ¶ 10, 468 P.3d 383, 388-89. The right of initiative, however, is not absolute; any citizen may protest the sufficiency or legality of an initiative petition. Id. ¶ 11, 468 P.3d at 389. When such a protest is made, this Court must review the petition to determine whether it complies with the Oklahoma Constitution, legislative enactments, and our own jurisprudence. Id.

¶3 Article 1, § 1 of the Oklahoma Constitution states, "The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." Likewise, the federal Supremacy Clause set out in the second paragraph of Article VI of the United States Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

Pursuant to these provisions, when a potential conflict between state and federal law arises, the state law is preempted. In re State Question 807, 2020 OK 57, ¶ 17, 468 P.3d at 390. Federal law has identified three forms of preemption that may arise from federal action: express preemption, field preemption, and conflict preemption. Id. ¶ 17, 468 P.3d at 389.

Express preemption occurs when a federal statute includes a provision stating that it displaces state law and defining the extent to which state law is preempted. Field preemption occurs when Congress expresses an intent to occupy an entire field, such that even complementary state regulation in the same area is foreclosed. Finally, conflict preemption occurs when there is an actual conflict between state and federal law.

Id. (internal citations omitted).

¶4 The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, the federal law which governs the use and trafficking of controlled substances, including marijuana, explicitly addresses the issue of federal preemption of state law:

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Section 903 makes clear that the CSA was not intended to occupy the field to exclusion of state law with respect to regulating the use and trafficking of controlled substances. However, Section 903 does provide that the CSA preempts state law in instances where a "positive conflict" arises.

¶5 A "positive conflict" arises either when it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of Congress's full purposes and objectives. See Hillsborough City, Fla. v. Automated Med Labs, Inc., 471 U.S. 707, 713 (1985). Even if the changes proposed in SQ 820 were to become law, it does not appear that compliance with state and federal law would be impossible. SQ 820 does not, for instance, contain any mandates that would require Oklahomans to violate the provisions of the CSA.

¶6 The passage of SQ 820 would, however, clearly present an obstacle to the accomplishment and execution of Congress's full purposes and objections expressed in the CSA. The purpose of the CSA was "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzalez v. Raich, 545 U.S. 1, 12 (2005). Marijuana is considered a Schedule I controlled substance under the CSA. 21 C.F.R. § 1308.11(d)(23). It is illegal for any person to manufacture, distribute, or dispense marijuana and also illegal for any person to possess marijuana with the intent to manufacture, distribute, or dispense it. 21 U.S.C. §§ 841(a)(1), 844(a).

¶7 If SQ 820's proposed amendments become law, there will unquestionably be a proliferation in the cultivation, manufacture, distribution, dispensation, and recreational use of marijuana in Oklahoma. These outcomes are hardly hypothetical. With these activities sanctioned and licensed by the State of Oklahoma, it would be virtually impossible for federal law enforcement to accomplish Congress's objective in the CSA to control the production, sale, and use of controlled substances.

¶8 When we confronted this issue in the past, it was asserted that the CSA could not be understood as preempting state laws which legalize trafficking in marijuana because that would mean the CSA violates the anti-commandeering doctrine. See In re State Question 807, 2020 OK 57, 468 P.3d 383. The anti-commandeering doctrine operates as a limit on federal preemption. "We have always understood that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power to directly compel the States to require or prohibit those acts." Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1477 (2018) (quotation omitted).

¶9 The CSA does not violate the anti-commandeering doctrine by preempting state laws which undermine its purpose and objectives. The CSA contains no direct mandate for the states to adopt drug enforcement regulations which mirror its provisions; the CSA merely prohibits certain conduct on behalf of individuals. Congress anticipated that states would adopt regulatory schemes that are generally complementary to federal law, even if not perfectly consistent with the CSA. Sanctioning activity that is proscribed by federal law, however, is in no sense complementary.

¶10 SQ 820's proposed amendments clearly present a substantial obstacle to Congress's objectives expressed in the CSA to control the production, sale, and use of controlled substances. SQ 820 is preempted by federal law and, thus, fails to comply with the Oklahoma Constitution. Accordingly, I cannot find that it is fit for submission to the people of Oklahoma.

FOOTNOTES

1 Article V, § 2 of the Oklahoma Constitution states:

The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the Office of Governor.

 

 

KANE, V.C.J., dissenting:

¶1 If we confine our analysis to determining the sufficiency of the gist, then the Initiative Petition must fail because the voters are not being informed that they are approving acts which violate Federal law. However, since the issue of the recreational use of marijuana clearly invokes a question pertaining to our Constitutional power to act, I must dissent to approval of the Petition, even if the gist were sufficient.

¶2 As I observed in In re State Question No. 807, 2020 OK 57, 468 P.3d 383 (Kane, J., dissenting), the sale, possession, and use of marijuana is preempted by Federal law, specifically the Federal Controlled Substances Act (CSA).1

¶3 I respectfully dissent.

FOOTNOTES

1 Other Courts have come to the same conclusion. See, e.g., Musta v. E Mendota Heights Dental Ctr., 965 N.W.2d 312 (Minn. 2021), wherein the Minnesota Supreme Court held that as a matter of first impression, the Controlled Substances Act (CSA) preempted the Minnesota Workers' Compensation Act, which had attempted to mandate reimbursement of employee's medical cannabis purchase.

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 2006 OK 45, 142 P.3d 400, IN RE: INITIATIVE PETITION NO. 382, STATE QUESTION NO. 729Discussed at Length
 2016 OK 51, 376 P.3d 250, IN RE INITIATIVE PETITION NO. 409, STATE QUESTION NO. 785Discussed at Length
 2020 OK 44, 465 P.3d 1259, IN RE: INITIATIVE PETITION No. 426 STATE QUESTION No. 810Cited
 2020 OK 57, 468 P.3d 383, IN RE: STATE QUESTION No. 807, INITIATIVE PETITION No. 423Discussed at Length
 2020 OK 79, 476 P.3d 471, IN RE STATE QUESTION No. 813, INITIATIVE PETITION No. 429Discussed at Length
Title 34. Initiative and Referendum
 CiteNameLevel

 34 O.S. 3, Petitions and SignaturesCited
 34 O.S. 8, Filing Copy of Proposed Petition - Publication - Protest - Hearing and Determination - Signature Gathering DeadlineDiscussed at Length
Title 75. Statutes and Reports
 CiteNameLevel

 75 O.S. 303, Adoption, Amendment or Repeal of Rule - ProcedureCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA