TAY v. GREEN
2022 OK 38
Case Number: 119984; Comp. w/119927
Decided: 04/19/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 38, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

PAUL TAY, Petitioner,
v.
JED GREEN and KRISTOPHER MASTERMAN, Respondents.

ORIGINAL PROCEEDING TO DETERMINE THE CONSTITUTIONAL 
VALIDITY OF STATE QUESTION NO. 819, INITIATIVE PETITION 
NO. 433.

¶0 This original proceeding determines the legal sufficiency of State Question No. 819, Initiative Petition No. 433, which seeks to create a new article to the Oklahoma Constitution, Article 32, which would legalize, regulate, and tax the recreational use of marijuana by adults age 21 years and older. Petitioner, Paul Tay, alleges that State Question No. 819, Petition No. 433 is unconstitutional for four reasons: (1) it is preempted by federal law; (2) signatures gathered on and elections held on tribal land would be invalid; (3) it violates the doctrine of non-retroactivity in post-conviction proceedings; and (4) the proposed gist is insufficient. Upon review, we hold Petitioner has not established clear or manifest facial unconstitutionality regarding the proposition's provisions; however, because the gist is insufficient and misleading with respect to Section 5, we invoke the severability clause in Section 9 and strike Section 5 and any reference to the stricken provision in the gist. State Question No. 819, Initiative Petition No. 433, as severed, is legally sufficient for submission to Oklahomans for voting.

STATE QUESTION NO. 819, INITIATIVE PETITION NO. 433, AS SEVERED, IS LEGALLY SUFFICIENT.

Paul Tay, Tulsa, Oklahoma, pro se Petitioner.

Stephen Cale, Cale Law Office, Tulsa, Oklahoma, for Respondents.

Gurich, J. 

Facts & Procedural History

¶1 On October 28, 2021, Respondents Jed Green and Kristopher Masterman, filed State Question No. 819, Initiative Petition No. 433 (SQ 819) with the Oklahoma Secretary of State. SQ 819 proposed creation of a new constitutional article, Article 32, which would legalize, regulate, and tax the recreational use of marijuana by adults age 21 years and older. The Oklahoma Secretary of State published notice of the filing on November 4, 2021. Petitioner timely brought this challenge on November 5, 2021, in accordance with 34 O.S.2021, § 8

 

Proposed Measure

 

¶2 Proposed Article 32 contains eleven (11) sections. Section 1 safeguards medical-marijuana patient, caregiver, and business licensees against any limiting construction of Article 32.

¶3 Section 2 grants personal rights and protections. Section 2 establishes the right "to grow, purchase, transport, transfer, receive, prepare and consume marijuana and marijuana products," subject to form and quantity limitations. It also permits the purchase, possession, and use of marijuana paraphernalia. Additionally, Section 2 provides general protections against arrest, prosecution, penalty, discipline, or discrimination by state and local government based solely on conduct permitted under Article 32. It expands on these general protections with regard to employment, medical care, parental rights, licensure rights, and due process and equal protection rights. Further, Section 2 protects financial-service providers from liability solely for providing services to any marijuana business licensed by the State of Oklahoma. It also requires the marijuana regulatory agency to comply with privacy laws. Lastly, Section 2 addresses local and homegrow rights: it prohibits additional licensing or fees related to homegrows; limits local-government regulation thereof; allows landlords to restrict homegrows; allows landlords and businesses to restrict indoor smoking or vaping of marijuana or marijuana products--but not other forms of lawful possession or consumption; and prohibits any statute, ordinance, or regulation regarding vaping or smoking cannabis that is more restrictive than those regarding tobacco use.

¶4 Section 3 authorizes the medical-marijuana regulatory agency to regulate recreational marijuana and authorizes medical-marijuana business licensees to commence recreational-marijuana business of the same business-license type without additional fee, license, or registration requirements. Moreover, Section 3 establishes when and to whom dispensaries may begin recreational-marijuana sales and requires the marijuana regulatory agency to adopt regulations authorizing residential delivery.

¶5 Section 4 establishes a framework for taxes and expenditures. It charges an excise tax of fifteen percent (15%), subject to lowering by the Oklahoma legislature, on marijuana and marijuana products purchased by persons who are not patient or caregiver licensees. On products purchased by patient or caregiver licensees, Section 4 imposes a seven percent (7%) excise tax, which incrementally drops to zero percent (0%) over one year. Further, Section 4 instructs the Oklahoma Tax Commission (OTC) to collect and direct taxes to a fund managed by the marijuana regulatory agency. It requires the agency to use the tax revenue to pay operational costs and allocates remaining revenue amongst various organizations, programs, and funds for certain expenditures. Subject to state or federal action permitting interstate or international export of marijuana and marijuana products, Section 4 instructs the OTC to collect a three percent (3%) wholesale tax and deposit the tax revenue in the State General Revenue Fund.

¶6 Section 5 regards retroactivity. It requires the Oklahoma Department of Corrections to publish within 180 days a list of persons currently incarcerated for marijuana-related state-court convictions. It permits currently incarcerated persons whose conduct would be allowed under Article 32 to request resentencing, modification, or reversal. It allows like persons who have completed their sentences to request dismissal, expungement, and vacatur of their conviction. Further, it requires the court to presume satisfaction of the criteria for the request and "without delay resentence or reverse the conviction as legally invalid, modify the judgment and sentence, or expunge and vacate the charges." Moreover, it states that expungement "shall automatically restore" firearm-ownership and voting rights. By its terms, Section 5 is applicable to juvenile cases "as if the juvenile had been of legal age at the time of the offense." Lastly, it safeguards petitioners from any construction that would diminish or abrogate other available rights or remedies or limit legislative authority regarding same.

¶7 Section 6 sets state protocol should the federal government legalize marijuana. It provides that Oklahoma's restrictions would not exceed federal restrictions and Oklahoma's quantity limitations would be raised to the federal maximum. It also provides that the Oklahoma Bureau of Narcotics and Dangerous Drugs will retain its enforcement authority, subject to the legislature's authority to change the responsible agency. Finally, Section 6 states that if the federal government allows interstate transfer, Oklahoma will, too, and authorizes the legislature and governor to permit same.

¶8 Section 7 provides for judicial review and instructs that all rules or regulations made pursuant to Article 32 must comply with the Oklahoma Administrative Procedures Act. Section 8 empowers the legislature to modify specific provisions of Article 32 by supermajority vote and others by simple-majority vote. Section 9 is a severability clause. Section 10 provides that Article 32 will be effective immediately upon passage. Section 11 contains a list of definitions.

Standard of Review

¶9 Oklahoma citizens "may protest the sufficiency and legality of an initiative petition." In re State Question No. 807, Initiative Petition No. 423, 2020 OK 57468 P.3d 383Id., 468 P.3d at 388 (internal citations omitted). The Court's pre-election review is restricted to determining whether the proposed measure contains "clear or manifest facial constitutional infirmities," and the protestant bears the burden of proof. Id. ¶ 12, 468 P.3d at 388 (internal citations omitted).

Analysis

¶10 To the extent we addressed preemption and the validity of state elections in Indian country in companion case No. 119,927, we apply our holdings therein, and reject Petitioner's identical arguments.

 

Federal law does not preempt SQ 819.

 

¶11 An exercise of state police power will not be found "preempted by federal action unless that is the clear and manifest purpose of Congress." In re State Question No. 807, 2020 OK 57

¶12 We first consider the provisions of section 922Id., ¶ 21, 468 P.3d at 390 (internal citations omitted). Though SQ 819 would authorize conduct subject to federal prosecution, compliance with state law and § 922(d)(3) and (g)(3) would be possible because SQ 819 does not mandate possession of firearms or ammunition by recreational-marijuana users. See id. ¶¶ 23-24, 468 P.3d at 390-91 (analyzing, under the physical-impossibility standard, whether actual conflict would exist between proposed state law and the Controlled Substances Act (CSA)). Further, SQ 819 does not impede the accomplishment and execution of Congress' purposes in enacting the GCA. Congress passed the GCA "to strengthen Federal Controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.R. Rep. No. 1577, at 2 (1968) as reprinted in 1968 U.S.C.C.A.N. 4410, 4411. SQ 819 does not attempt to alter or weaken the GCA or limit enforcement of federal law by federal agents.

¶13 Likewise, SQ 819 is not preempted by 18 U.S.C. § 1956(a)In re State Question No. 807, 2020 OK 57

¶14 Further, the illegality of an activity does not bar its taxation. In re State Question No. 807, 2020 OK 57Id. ¶ 40, 468 P.3d at 395 ("[I]t is axiomatic that if the states and federal government are permitted to tax illegal activity, they are permitted to use the resulting revenue."). Thus, § 1956(a) and § 1957 do not preempt SQ 819.

Challenge to the Gist

¶15 Under 34 O.S.2021, § 3In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75797 P.2d 326see also In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30

The Oklahoma Marijuana Regulation and Right to Use Act
This constitutional amendment: grants the right to use marijuana to persons 21 years of age and older; establishes individual patient, professional, privacy, employment, medical, parental, student, firearm ownership, state-licensure, and due process rights; has a fiscal impact and pays for itself with taxes on marijuana sales; sets a tax rate of 15% on marijuana sales, except for persons with a medical marijuana patient or caregiver license; directs surplus revenue to pay for education, local and military veterans mental health programs, programs for families with disabled children, rural water infrastructure, law enforcement training, research, marijuana waste clean-up, and agricultural damage insurance, and individual criminal record expungement; adapts to future federal legalization of marijuana, including a 3% wholesale export tax; allows persons with minor marijuana convictions to apply for resentencing, vacatur and/or expungement; provides for judicial review, severability and provides definitions of terms used in this amendment; becomes effective upon passage and provides time for implementation.

(emphasis added).

¶16 Petitioner argues that SQ 819's gist is insufficient and misleading because it does not warn voters of federal criminal consequences for marijuana possession and use. We rejected Petitioner's argument regarding SQ 818 because the gist sufficiently explained changes to be made to Oklahoma law. Likewise, we reject Petitioner's argument that the gist must describe federal consequences. However, we conclude the gist insufficiently informs voters of Section 5's effect on Oklahoma law.

¶17 The gist fails to describe two significant effects of Section 5: (1) the bypass of judicial process for resentencing, modification, reversal, dismissal, expungement, or vacatur; and (2) the automatic and absolute restoration of firearm-ownership and voting rights upon completed expungement. As written, the gist misleads potential signatories to believe SQ 819 adheres to established judicial process. In reality, it does not provide for a procedure whereby the State may object to resentencing, modification, reversal, dismissal, expungement, or vacatur. Section 5(4) provides: "Upon receiving a petition, the court shall presume the petitioner satisfies the criteria . . . and without delay resentence or reverse the conviction as legally invalid, modify the judgment and sentence, or expunge and vacate the charges."

 

¶18 The remaining gist, although not all-encompassing,In re Initiative Petition No. 426, State Question No. 810, 2020 OK 44465 P.3d 1259see also In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51376 P.3d 250

 

INITIATIVE PETITION NO. 819, STATE QUESTION NO. 433, BY SEVERING SECTION 5 AND PORTIONS OF THE GIST REFERENCING SECTION 5, IS LEGALLY SUFFICIENT TO SUBMIT TO THE PEOPLE OF OKLAHOMA.

DARBY, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, AND GURICH, JJ., CONCUR;

KANE, V.C.J. DISSENTS (BY SEPARATE WRITING);

ROWE, J. CONCURS IN PART; DISSENTS IN PART (BY SEPARATE WRITING), KUEHN, J., CONCURS IN PART; DISSENTS IN PART.

FOOTNOTES

34 O.S. § 8

It shall be the duty of the Secretary of State to cause to be published, in at least one newspaper of general circulation in the state, a notice of such filing and the apparent sufficiency or insufficiency of the petition, and shall include notice that any citizen or citizens of the state may file a protest as to the constitutionality of the petition, by a written notice to the Supreme Court and to the proponent or proponents filing the petition. Any such protest must be filed within ten (10) business days after publication. A copy of the protest shall be filed with the Secretary of State.

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person--

(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))[.]

(g) It shall be unlawful for any person--

(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))

[. . .]

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 2 provides, in part:

(19) No conduct permitted under this Article shall be the basis for the denial, revocation or suspension of any state-issued license, including drivers' licenses, concealed carry permits, occupational or professional licensing.

[ . . . ]

(21) No licensee of the agency responsible for regulating marijuana shall be denied the right to own, purchase, possess or use a firearm, ammunition, or firearm accessories solely on the basis of conduct permitted under this Article.

(22) No state or local agency, municipal or county governing authority shall restrict, revoke, suspend or otherwise infringe upon the right of a person to own, purchase or possess a firearm, ammunition, or firearm accessories or any related firearm license or certification solely on the basis of conduct permitted under this Article.

(23) No state or local agency, municipal or county governing authority shall enforce or assist in enforcing a federal law that prohibits or restricts firearm use or ownership solely on the basis of conduct permitted under this Article.

Section 5 provides, in part:

(5) Nothing in this section shall be construed to diminish or abrogate any rights or remedies otherwise available to the petitioner or applicant. The provisions of this section shall apply equally to juvenile cases as if the juvenile had been of legal age at the time of the offense. A completed expungement shall automatically restore the person's rights to possess and use firearms. A completed expungement of marijuana related felony convictions shall also automatically restore the person's right to vote.

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

See In re State Question No. 807, 2020 OK 57See Prigg v. Pennsylvania, 41 U.S. 539, 541 (1842) ("[I]t might well be deemed an unconstitutional exercise of the power of interpretation, to insist that the states are bound to provide means to carry into effect the duties of the national government, nowhere delegated or instructed to them by the Constitution."). The anti-commandeering doctrine bars Congress from appropriating state power for federal purposes. See generally Prigg, 41 U.S. 539; Printz v. United States, 521 U.S. 898 (1997); Murphy v. NCAA, __ U.S.__, 138 S.Ct. 1461 (2018). Congress may greatly depend on States to police and regulate controlled substances under the standards established by the CSA, but a State's decision to do so according to a different, yet complementary state standard, does not frustrate Congress' purposes in enacting the CSA.

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part--

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

See In re: State Question No. 820, Initiative Petition No. 434, 2022 OK 30Id. ¶ 6, __ P.3d at __. The gist explained: "It would provide a judicial process for people to seek modification, reversal, redesignation, or expungement of certain prior marijuana-related judgments and sentences." This explanation was sufficient because SQ 820 did not attempt to bypass the established judicial process regarding modification, reversal, redesignation, or expungement. With respect to any qualifying "person currently serving a sentence for conviction . . . who would not have been guilty of an offense or who would have been guilty of a lesser offense under this Act had it been in effect at the time of the offense," SQ 820 would require the court to "presume the petitioner satisfies the criteria [for resentencing, modification, or reversal] and without delay" grant the request "unless the State opposes the petition or alleges that granting the petition would pose an unreasonable risk of danger to an identifiable individual's safety." If the State objects, SQ 820 provides that the petitioner is "entitled to a hearing on the record, including the opportunity to question witnesses and present evidence" and "[t]he State shall bear the burden of proving, by clear and convincing evidence, that the petitioner does not satisfy the criteria [for resentencing, modification, or reversal] or that granting the petition would pose an unreasonable risk of danger to an identifiable individual if alleged." With respect to any qualifying "person who has completed his or her sentence for a conviction . . . [and] who would not have been guilty of an offense or who would have been guilty of a lesser offense under this Act had it been in effect at the time of the offense," the judicial process to "have a conviction dismissed, expunged, and vacated as legally invalid or redesignated as a civil infraction" is the same, except that "[u]nless requested by the applicant, no hearing is necessary . . . ." Unlike SQ 820, SQ 819 would not provide judicial process for the State to rebut the presumption or otherwise oppose the granting of the petition--a significant deviation from established judicial process under Oklahoma law..

A person shall not be denied by the state or local government the right to own, purchase or possess a firearm, ammunition, or firearm accessories based solely on conduct that is addressed and permitted by this Act. No state or local agency, municipal or county governing authority shall restrict, revoke, suspend or otherwise infringe upon the right of a person to own, purchase, or possess a firearm, ammunition, or firearm accessories or any related firearms license or certification based solely on conduct that is addressed and permitted by this Act.

In re Initiative Petition No. 315, State Question No. 553, 1982 OK 15649 P.2d 545In re Initiative Petition No. 358, State Question No. 658, 1994 OK 27870 P.2d 782

The provisions hereof are severable, and if any part or provision hereof shall be void, invalid, or unconstitutional, the decision of the court so holding shall not affect or impair any of the remaining parts or provision hereof, and the remaining provisions hereof shall continue in full force and effect.

 

 

KANE, V.C.J., dissenting:

¶1 I dissent to any ruling that the legalization of marijuana is within the purview of the State, for the reasons I have previously set forth in In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30

 

 

ROWE, J., concurring in part, dissenting in part:

¶1 I concur with the Court's decision to assume original jurisdiction. I must dissent, however, from the Court's holding that State Question No. 819, Initiative Petition No. 433 ("SQ 819") is constitutionally sufficient to submit to the people of Oklahoma for the same reasons I set forth in In re State Question No. 820, Initiative Petition 434, 2022 OK 30

¶2 The right to an initiative petition is the first power reserved for the people of Oklahoma under Article 5, § 2 of the Oklahoma Constitution.In re State Question No. 807, Initiative Petition 423, 2020 OK 57468 P.3d 383Id. ¶ 11, 468 P.3d at 389. When such a protest is made, this Court must review the petition to determine whether it complies with the Oklahoma Constitution, legislative enactments, and our own jurisprudence. Id.

¶3 Article 1, § 1 of the Oklahoma Constitution states, "The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." Likewise, the federal Supremacy Clause set out in the second paragraph of Article VI of the United States Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

Pursuant to these provisions, when a potential conflict between state and federal law arises, the state law is preempted. In re State Question 807, 2020 OK 57Id. ¶ 17, 468 P.3d at 389.

Express preemption occurs when a federal statute includes a provision stating that it displaces state law and defining the extent to which state law is preempted. Field preemption occurs when Congress expresses an intent to occupy an entire field, such that even complementary state regulation in the same area is foreclosed. Finally, conflict preemption occurs when there is an actual conflict between state and federal law.

Id. (internal citations omitted).

¶4 The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, the federal law which governs the use and trafficking of controlled substances, including marijuana, explicitly addresses the issue of federal preemption of state law:

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Section 903 makes clear that the CSA was not intended to occupy the field to exclusion of state law with respect to regulating the use and trafficking of controlled substances. However, Section 903 does provide that the CSA preempts state law in instances where a "positive conflict" arises.

¶5 A "positive conflict" arises either when it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of Congress's full purposes and objectives. See Hillsborough City, Fla. v. Automated Med Labs, Inc., 471 U.S. 707, 713 (1985). Even if the changes proposed in SQ 819 were to become law, it does not appear that compliance with state and federal law would be impossible. SQ 819 does not, for instance, contain any mandates that would require Oklahomans to violate the provisions of the CSA.

¶6 The passage of SQ 819 would, however, clearly present an obstacle to the accomplishment and execution of Congress's full purposes and objections expressed in the CSA. The purpose of the CSA was "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzalez v. Raich, 545 U.S. 1, 12 (2005). Marijuana is considered a Schedule I controlled substance under the CSA. 21 C.F.R. § 1308.11(d)(23). It is illegal for any person to manufacture, distribute, or dispense marijuana and also illegal for any person to possess marijuana with the intent to manufacture, distribute, or dispense it. 21 U.S.C. §§ 841(a)(1), 844(a).

¶7 If SQ 819's proposed amendments become law, there will unquestionably be a proliferation in the cultivation, manufacture, distribution, dispensation, and recreational use of marijuana in Oklahoma. These outcomes are hardly hypothetical. With these activities sanctioned and licensed by the State of Oklahoma, it would be virtually impossible for federal law enforcement to accomplish Congress's objective in the CSA to control the production, sale, and use of controlled substances.

¶8 When we confronted this issue in the past, it was asserted that the CSA could not be understood as preempting state laws which legalize trafficking in marijuana because that would mean the CSA violates the anti-commandeering doctrine. See In re State Question 807, 2020 OK 57468 P.3d 383Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1477 (2018) (quotation omitted).

¶9 The CSA does not violate the anti-commandeering doctrine by preempting state laws which undermine its purpose and objectives. The CSA contains no direct mandate for the states to adopt drug enforcement regulations which mirror its provisions; the CSA merely prohibits certain conduct on behalf of individuals. Congress anticipated that states would adopt regulatory schemes that are generally complementary to federal law, even if not perfectly consistent with the CSA. Sanctioning activity that is proscribed by federal law, however, is in no sense complementary.

¶10 SQ 819's proposed amendments clearly present a substantial obstacle to Congress's objectives expressed in the CSA to control the production, sale, and use of controlled substances. SQ 819 is preempted by federal law and, thus, fails to comply with the Oklahoma Constitution. Accordingly, I cannot find that it is fit for submission to the people of Oklahoma.

FOOTNOTES

The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the Office of Governor.