TAY v. GREEN2022 OK 37Case Number: 119927; Comp. w/119984Decided: 04/19/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 37, __ P.3d __

PAUL TAY, Petitioner,
v.
JED GREEN and KRISTOPHER MASTERMAN, Respondents.

ORIGINAL PROCEEDING TO DETERMINE THE CONSTITUTIONAL
VALIDITY OF STATE QUESTION NO. 818, INITIATIVE PETITION
NO. 432.

¶0 This original proceeding declares a challenge against the legal sufficiency of State Question No. 818, Initiative Petition No. 432. State Question 818, Petition No. 432 seeks to create a new article to the Oklahoma Constitution, Article 31, which would (1) replace the Oklahoma Medical Marijuana Authority with a new state agency--the "Oklahoma State Cannabis Commission" and define its duties; and (2) expand the statutory framework regarding regulation and taxation of medical marijuana. Petitioner, Paul Tay, alleges that State Question No. 818, Petition No. 432 is unconstitutional for three reasons: (1) it is preempted by federal law; (2) signatures gathered on and elections held on tribal land would be invalid; and (3) its gist is insufficient. We hold Petitioner has failed to establish clear or manifest facial unconstitutionality. State Question No. 818, Initiative Petition No. 432 is legally sufficient for submission to Oklahomans for voting.

STATE QUESTION NO. 818, INITIATIVE PETITION NO. 432 IS LEGALLY SUFFICIENT.

Paul Tay, Tulsa, Oklahoma, pro se Petitioner.

Stephen Cale, Cale Law Office, Tulsa, Oklahoma, for Respondents.

Gurich, J.

Facts & Procedural History

¶1 On October 7, 2021, Respondents, Jed Green and Kristopher Masterman, filed two state questions with the Oklahoma Secretary of State: (1) State Question No. 817, Initiative Petition No. 431 (SQ 817); and (2) State Question No. 818, Initiative Petition No. 432 (SQ 818). SQ 817 proposed creation of a new constitutional article, Article 32, which would legalize, regulate, and tax recreational use of marijuana by adults of age 21 years or older under Oklahoma law.

 

¶2 The Secretary of State published notice of the initiative petition filings on October 13, 2021. Petitioner timely challenged both on October 18, 2021, in accordance with 34 O.S.2021, § 8

Standard of Review

¶3 Oklahoma citizens "may protest the sufficiency and legality of an initiative petition." In re State Question No. 807, Initiative Petition No. 423, 2020 OK 57468 P.3d 383Id., 468 P.3d at 388 (internal citations omitted). The Court's pre-election review is restricted to determining whether the proposed measure contains "clear or manifest facial constitutional infirmities." Id. ¶ 12, 468 P.3d at 388 (internal citation omitted). The protestant bears the burden of proof. Id., 468 P.3d at 388 (internal citations omitted).

Analysis

¶4 Petitioner argues SQ 818 is unconstitutional because its subject matter has been preempted by federal law; signatures gathered in Indian country and elections held in Indian country would be invalid; and SQ 818's gist does not warn of federal criminal consequences.

Federal law does not preempt SQ 818

¶5 Petitioner claims the following federal statutes and case law preempt and render SQ 818 facially unconstitutional: (1) the Controlled Substances Act (CSA), codified at 21 U.S.C. §§ 801--904; (2) the Racketeer Influenced and Corrupt Organizations Act (RICO), codified at 18 U.S.C. §§ 1961--1968; (3) federal law prohibiting unlicensed money transmitting businesses, codified at 18 U.S.C. § 1960 (2018); and (4) McGirt v. Oklahoma, 591 U.S. __, 140 S.Ct. 2452 (2020).

¶6 Twice, this Court has held that the CSA and RICO do not preempt the proposed measures in SQ 818. See In re State Question 807, 2020 OK 57see also In re State Question No. 813, Initiative Petition No. 429, 2020 OK 79476 P.3d 471In re State Question 807 and rejecting Petitioner's recurrent arguments). We apply our prior holdings and again reject Petitioner's repeated arguments.

¶7 The federal law prohibiting unlicensed money transmitting businesses does not preempt SQ 818. 18 U.S.C. § 1960 penalizes "[w]hoever knowingly conducts, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business." The statute references 31 U.S.C. § 5330 (2018 & Supp. 2020), which defines "money transmitting business" as follows:

any business other than the United States Postal Service which--

(A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;

(B) is required to file reports under section 5313; and

(C) is not a depository institution (as defined in section 5313(g)).

SQ 818 does not concern a money transmitting business and is thus not preempted by §1960.

¶8 Finally, the Supreme Court of the United States' decision in McGirt does not preempt SQ 818. Petitioner attempts to equate violations of the CSA to major crimes governed by the Major Crimes Act and subject to exclusive federal jurisdiction for crimes committed in Indian country. But, the Major Crimes Act does not identify marijuana possession or marijuana use by Indians among the specific offenses subject to exclusive federal jurisdiction, 18 U.S.C. § 1153 (2018), and cannot form the basis for preemption.

Signatures and elections in Indian country are valid

¶9 Petitioner claims Article 1, § 3 of the Oklahoma Constitution renders signatures gathered and elections held in Indian country invalid, relying on McGirt. Petitioner is wrong. Article 1, § 3 provides in part:

The people inhabiting the State do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States.

Okla. Const. art. 1, § 3 (emphasis added). Under Article 1, § 3, Oklahoma has not waived its political or police power over activities occurring in Indian country within its boundaries.Currey v. Corp. Comm'n of Okla., 1979 OK 89617 P.2d 177Id. ¶ 23, 617 P.2d at 181. McGirt does not disenfranchise Oklahoma citizens residing in Indian country from the right to participate in state elections, which includes the right to sign an initiative petition. Okla. Const. art. 5, § 2; In re State Question No. 807, 2020 OK 57

The gist is legally sufficient

¶10 The gist of SQ 818 follows:

The Oklahoma Medical Marijuana Enforcement and Anti-Corruption Act

This constitutional amendment: regulates cannabis, hemp, marijuana and plant based medicine; creates a state agency, the Oklahoma State Cannabis Commission; audits the current medical marijuana program; delegates powers to the Governor, Legislature and the Commission; establishes the Commission Board, its membership and meeting requirements, and its relationships with state agencies; has a fiscal impact and pays for itself with taxes on marijuana sales and fees on businesses and individuals; establishes those taxes, licenses, license requirements and fees; directs surplus revenue to pay for education, local and military veterans mental health programs, law enforcement, research, marijuana waste clean-up, and agricultural insurance; provides licensed marijuana businesses with tax deductions, and some hemp businesses with limited tax credits; adapts to federal legalization of marijuana; provides guidelines for consumer protection and establishes individual patient, professional, privacy, employment, medical, parental, student, firearm ownership, state-licensure, and due process rights; provides for judicial review, severability; and becomes effective upon passage with time for implementation.

¶11 Petitioner claims that SQ 818's gist is insufficient and misleading because it does not warn voters of federal criminal consequences for marijuana possession and use. Under 34 O.S.2021, § 3In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75797 P.2d 326see also In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30See In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51376 P.3d 25034 O.S. § 3

¶12 Petitioner, Paul Tay, failed to meet his burden in establishing that State Question No. 818 is clearly or manifestly unconstitutional and that the gist of State Question No. 818 is misleading. The Court assumes original jurisdiction and denies Petitioner's challenge to the constitutionality and sufficiency of State Question No. 818. State Question No. 818 is legally sufficient for submission to the people of Oklahoma.

DARBY, C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, AND GURICH, JJ., CONCUR;

KANE, V.C.J. DISSENTS (BY SEPARATE WRITING);

ROWE, J. CONCURS IN PART; DISSENTS IN PART (BY SEPARATE WRITING), KUEHN, J., CONCURS IN PART; DISSENTS IN PART.

FOOTNOTES

State ex rel. Okla. Firefighters Pension & Ret. Sys. v. City of Spencer, 2009 OK 73237 P.3d 125

34 O.S. § 8

It shall be the duty of the Secretary of State to cause to be published, in at least one newspaper of general circulation in the state, a notice of such filing and the apparent sufficiency or insufficiency of the petition, and shall include notice that any citizen or citizens of the state may file a protest as to the constitutionality of the petition, by a written notice to the Supreme Court and to the proponent or proponents filing the petition. Any such protest must be filed within ten (10) business days after publication. A copy of the protest shall be filed with the Secretary of State.

All medical marijuana licenses and rights granted under Oklahoma law and this Chapter shall only be valid in the State of Oklahoma, excluding any tribal trust or tribal restricted land or federal lands in the state.

This issue is not properly before the Court; the current proceeding challenges the constitutionality of SQ 818, not the current medical-marijuana statutory and regulatory framework.

2020 OK 57468 P.3d 383

 

 

KANE, V.C.J., dissenting:

¶1 I dissent to any ruling that the legalization of marijuana is within the purview of the State, for the reasons I have previously set forth in In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30

 

 

ROWE, J., concurring in part, dissenting in part:

¶1 I concur with the Court's decision to assume original jurisdiction. I must dissent, however, from the Court's holding that State Question No. 818, Initiative Petition No. 432 ("SQ 818") is constitutionally sufficient to submit to the people of Oklahoma for the same reasons I set forth in In re State Question No. 820, Initiative Petition 434, 2022 OK 30

¶2 The right to an initiative petition is the first power reserved for the people of Oklahoma under Article 5, § 2 of the Oklahoma Constitution.In re State Question No. 807, Initiative Petition 423, 2020 OK 57468 P.3d 383Id. ¶ 11, 468 P.3d at 389. When such a protest is made, this Court must review the petition to determine whether it complies with the Oklahoma Constitution, legislative enactments, and our own jurisprudence. Id.

¶3 Article 1, § 1 of the Oklahoma Constitution states, "The State of Oklahoma is an inseparable part of the Federal Union, and the Constitution of the United States is the supreme law of the land." Likewise, the federal Supremacy Clause set out in the second paragraph of Article VI of the United States Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

Pursuant to these provisions, when a potential conflict between state and federal law arises, the state law is preempted. In re State Question 807, 2020 OK 57Id. ¶ 17, 468 P.3d at 389.

Express preemption occurs when a federal statute includes a provision stating that it displaces state law and defining the extent to which state law is preempted. Field preemption occurs when Congress expresses an intent to occupy an entire field, such that even complementary state regulation in the same area is foreclosed. Finally, conflict preemption occurs when there is an actual conflict between state and federal law.

Id. (internal citations omitted).

¶4 The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, the federal law which governs the use and trafficking of controlled substances, including marijuana, explicitly addresses the issue of federal preemption of state law:

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

21 U.S.C. § 903. Section 903 makes clear that the CSA was not intended to occupy the field to exclusion of state law with respect to regulating the use and trafficking of controlled substances. However, Section 903 does provide that the CSA preempts state law in instances where a "positive conflict" arises.

¶5 A "positive conflict" arises either when it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of Congress's full purposes and objectives. See Hillsborough City, Fla. v. Automated Med Labs, Inc., 471 U.S. 707, 713 (1985). Even if the changes proposed in SQ 818 were to become law, it does not appear that compliance with state and federal law would be impossible. SQ 818 does not, for instance, contain any mandates that would require Oklahomans to violate the provisions of the CSA.

¶6 The passage of SQ 818 would, however, clearly present an obstacle to the accomplishment and execution of Congress's full purposes and objections expressed in the CSA. The purpose of the CSA was "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Gonzalez v. Raich, 545 U.S. 1, 12 (2005). Marijuana is considered a Schedule I controlled substance under the CSA. 21 C.F.R. § 1308.11(d)(23). It is illegal for any person to manufacture, distribute, or dispense marijuana and also illegal for any person to possess marijuana with the intent to manufacture, distribute, or dispense it. 21 U.S.C. §§ 841(a)(1), 844(a).

¶7 If SQ 818's proposed amendments become law, there will unquestionably be a proliferation in the cultivation, manufacture, distribution, dispensation, and recreational use of marijuana in Oklahoma. These outcomes are hardly hypothetical. With these activities sanctioned and licensed by the State of Oklahoma, it would be virtually impossible for federal law enforcement to accomplish Congress's objective in the CSA to control the production, sale, and use of controlled substances.

¶8 When we confronted this issue in the past, it was asserted that the CSA could not be understood as preempting state laws which legalize trafficking in marijuana because that would mean the CSA violates the anti-commandeering doctrine. See In re State Question 807, 2020 OK 57468 P.3d 383Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1477 (2018) (quotation omitted).

¶9 The CSA does not violate the anti-commandeering doctrine by preempting state laws which undermine its purpose and objectives. The CSA contains no direct mandate for the states to adopt drug enforcement regulations which mirror its provisions; the CSA merely prohibits certain conduct on behalf of individuals. Congress anticipated that states would adopt regulatory schemes that are generally complementary to federal law, even if not perfectly consistent with the CSA. Sanctioning activity that is proscribed by federal law, however, is in no sense complementary.

¶10 SQ 818's proposed amendments clearly present a substantial obstacle to Congress's objectives expressed in the CSA to control the production, sale, and use of controlled substances. SQ 818 is preempted by federal law and, thus, fails to comply with the Oklahoma Constitution. Accordingly, I cannot find that it is fit for submission to the people of Oklahoma.

FOOTNOTES

The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the Office of Governor.