NICHOLS v. ZIRIAX
2022 OK 76
Case Number: 120646
Decided: 09/21/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 76, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

MICHELLE TILLEY NICHOLS and MICHELLE JONES, Petitioners,
v.
PAUL ZIRIAX, Secretary of the Oklahoma State Election Board; TOM MONTGOMERY, Chairman of the Oklahoma State Election Board; TIM MAULDIN, Vice Chairman of the Oklahoma State Election Board; HEATHER MAHIEU CLINE, Member of the Oklahoma State Election Board; JERRY BUCHANAN, Alternate Member of the Oklahoma State Election Board; DEBI THOMPSON, Alternate Member of the Oklahoma State Election Board; and THE HONORABLE J. KEVIN STITT, Governor of Oklahoma, Respondents.

APPLICATION TO ASSUME ORIGINAL JURISDICTION AND PETITION FOR WRIT OF MANDAMUS

¶0 Petitioners are the proponents of Initiative Petition No. 434, State Question No. 820 (hereinafter "SQ820"), which in simple terms would legalize, regulate, and tax marijuana that is recreationally used by adults through the enactment of new laws to be codified at title 63, sections 431 through 446 of the Oklahoma Statutes. Petitioners ask this Court to assume original jurisdiction and to issue a writ of mandamus that would require Respondents to print SQ820 on the ballot for the general election being held November 8, 2022. At the time Petitioners filed their petition for an emergency writ on August 22nd, this Court had not even certified the number of signatures on SQ820's initiative petitions as numerically sufficient pursuant to 34 O.S.2021, § 8See 34 O.S.2021, § 826 O.S.2021, § 14-118

ORIGINAL JURISDICTION PREVIOUSLY ASSUMED;
WRIT OF MANDAMUS DENIED.

Melanie Wilson Rughani, CROWE & DUNLEVY, Oklahoma City, Oklahoma, for Petitioners.

Zach West, Solicitor General, and Thomas R. Schneider, Deputy General Counsel, OFFICE OF ATTORNEY GENERAL, Oklahoma City, Oklahoma, for Respondents.

Denise Lawson, GLENN COFFEE & ASSOCIATES, PLLC, Oklahoma City, Oklahoma, for Amici Curiae, State Chamber Research Foundation Legal Center, the Oklahoma Farm Bureau Legal Foundation, and the Oklahoma Cattleman's Association.

 

COMBS, J.:

FACTUAL BACKGROUND

¶1 On January 4, 2022, Petitioners Michelle Tilley Nichols and Michelle Jones filed Initiative Petition No. 434, State Question No. 820, which if approved by voters would legalize, regulate, and tax marijuana used recreationally by adults through the enactment of new law to be codified at title 63, sections 431 through 446 of the Oklahoma Statutes. After an unsuccessful constitutional challenge to the measure, see In re State Question No. 820, Initiative Petition No. 434, 2022 OK 30507 P.3d 125134 O.S.2021, § 834 O.S.2021, § 6.1

 

¶2 This is the first general election year in which the Secretary of State has been tasked with the verification of signatures on initiative petitions. Previously, section 6.1 only required the Secretary of State to "make or cause to be made a physical count of the number of signatures on the petitions," see 34 O.S.2011, § 6.1verification and physical count of the number of signatures on the petitions," see Act of May 21, 2020, ch. 125, sec. 7, § 6.1(A), 2020 Okla. Sess. Laws 451, 454 (codified at 34 O.S.2021, § 6.1See id. secs. 2, 7, §§ 2(A)--(B), 6.1(A)(8), 2020 Okla. Sess. Laws at 452--53, 455 (codified at 34 O.S.2021, §§ 2See id. sec. 7, § 6.1(A)(8), 2020 Okla. Sess. Laws at 455 (codified at 34 O.S.2021, § 6.1See id. sec. 7, § 6.1(C), 2020 Okla. Sess. Laws at 455 (codified at 34 O.S.2021, § 6.1

 

¶3 With their early start for counting signatures, Petitioners were hopeful they could get SQ820 on the November 2022 general election ballot. When Petitioners dropped off their signature pamphlets, the Secretary of State's Office advised them that the counting and verification process would likely take two to three weeks--which was historically how long it had taken to manually count signatures--or that the process may be even faster due to the new electronic counting process that would be conducted by the Secretary of State's vendor, Western Petition Systems (hereinafter "WPS"), on its newly created software. Pet'rs' App., tab C, Nichols Aff. ¶ 8, at 2. In order to facilitate the process, Petitioners met with the Secretary of State's Office to ensure the signature sheets were formatted and printed correctly so that the signature pages would scan through the WPS machines as expected. Id. ¶ 9, at 2.

¶4 Nevertheless, the initiative petition process got bogged down in the Secretary of State's Office. Petitioners, who had a campaign representative on site each day to observe the counting and verification process, claim that most of the work still had to be performed by individuals doing manual data entry because the scan of signature sheets using WPS software frequently generated "wildly inaccurate" digital text. Id. ¶¶ 12, 18, at 2--3. Consequently, most signature sheets had to be looked at individually so that names, addresses, and other data points could be corrected through manually typing them into the WPS program. Id. ¶ 18, at 3. Moreover, WPS is a small local business owned and operated by Bill Shapard, a political pollster, and his company could only supply four employees--who happen to be his family members--to lead the electronic verification process. See id. ¶ 14, at 2. Quickly it became obvious that the team was processing only 1,000 signature sheets per day, and there were approximately 23,000 signature sheets to process. See id. ¶ 20, at 3. That meant the process would take at least four-and-a-half weeks for data input. Petitioners offered volunteers to enter data and suggested acquiring more machines or working past 5 o'clock in order to speed up the process, but the Secretary of State refused these measures. Id. ¶¶ 20, 22, at 3. Instead, the Secretary of State hired and trained numerous temporary workers and reallocated some of his full-time staff. See Resp'ts' Resp. ex. A, Bingman Aff. ¶¶ 11 & n.1, 18, at 3--4. Petitioners also suggested speeding up the count by seeing if they had met the 95,000-signature threshold without processing all the signature sheets, but they were told no interim reports could be run because, with how the software was designed, the signatures could not be verified until the very end, after all the signature sheets had been processed. See id. ¶¶ 12--16, at 3--4; Pet'rs' App., tab C, ¶¶ 21--22, at 3. Ultimately, the signature and verification process did not conclude until August 17th, after nearly seven weeks.

¶5 On August 10, 2022, Respondent Paul Ziriax advised Petitioner Michelle Tilley Nichols that the State Election Board had an "internal" deadline of August 26th for printing the November 2022 general election ballots and that there would be no wiggle room with that self-imposed deadline. See Pet'rs' App., tab C, Nichols Aff. ¶ 23, at 4. Mr. Ziriax also informed Ms. Tilley Nichols that he would not be printing SQ820 on the November 2022 general election ballot unless he received a proclamation from the Governor by August 26th authorizing SQ820 to be placed on the ballot in compliance with 34 O.S.2021, § 12Id.; see also Pet'rs' App., tab D, Letter from Paul Ziriax, Okla. State Election Bd., to Kevin Stitt, Governor of Okla., 1 (June 22, 2022) ("Monday, August 29, 2022, is technically the statutory deadline to call a State Question election for the November 8 General Election. (However, as a practical matter the State Election Board needs to receive an executive proclamation no later than 5:00 p.m. on Friday, August 26, 2022, which is when county election boards must certify the results of the Runoff Primary elections.) This 'practical deadline' ensures that county election boards have time to prepare ballots to meet the 45-day deadline to send absentee ballots to military voters.").

¶6 On August 22nd, Petitioners filed this action, asking this Court to assume original jurisdiction and to issue a writ of mandamus requiring the Respondents to take all necessary actions that would ensure SQ820 makes it on the November 2022 general election ballot. Petitioners argue that Article V, Section 3 of the Oklahoma Constitution mandates that all elections on measures referred to the people "shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference." Okla. Const. art. V, § 3 (emphasis added). In an attempt to bolster the initial mandatory language and to avoid the subsequent qualifying language, Petitioners point us to case law interpreting Article V, Section 3--namely, Allen v. Burkhart, 1962 OK 279377 P.2d 821

¶7 Despite Petitioners' insistence that mandate should issue, Respondents have pointed out several statutory provisions that must be complied with before SQ820 can be put on the ballot. As of August 22nd, the Secretary of State had not certified to this Court the numerical sufficiency of the signatures he reviewed pursuant to 34 O.S.2021, § 8Id. § 8(K). Once "all objections or protests have been resolved or the period for filing such has expired, the Secretary of State shall, in writing, notify the Governor." Id. § 12. Finally, upon notification, "the Governor . . . shall issue a proclamation setting forth the substance of the measure and the date on which the vote will be held." Id.

¶8 Before the Court reviewed the matter, the Secretary of State filed on August 22nd a notice with this Court certifying a total number of 117,257 verified signatures, which satisfied the requirements of Article V, Section 3 of the Oklahoma Constitution. See Sec'y of State's Certification to the Sup. Ct. of Okla. of the Signature Count of Initiative Pet. 434, State Question 820 ¶ 5, at 1, In re Initiative Pet. 434, State Question 820, No. 120,641 (Okla. filed Aug. 22, 2022). By order dated August 25th, this Court found the signatures in support of SQ820 to be numerically sufficient and directed the Secretary of State to comply with the notice requirements in 34 O.S.2021, § 8In re Initiative Pet. 434, State Question 820, No. 120,641 (Okla. Aug. 25, 2022).

¶9 The parties made oral presentations to a Supreme Court Referee on August 26th, at which point the matter was submitted for consideration of the merits. Because there were still several statutory requirements to be met, this Court was not ready to assume original jurisdiction and issue the requested writ of mandamus. But because there was still the potential to comply with the remaining statutory requirements in time to get SQ820 on the November 2022 general election ballot, this Court was not yet willing to deny the requested writ of mandamus. So long as the statutory requirements in 34 O.S.2021, §§ 826 O.S.2021, § 14-118

¶10 The process has practically played out at this point. The Secretary of State published the notice required by section 8(I) in three newspapers of statewide circulation on Wednesday, August 31st. See Okla. Sec'y of State's Proof of Publ'n 1, In re Initiative Pet. 434, State Question 820, No. 120,641 (Okla. filed Sept. 1, 2022). Accordingly, citizens had 10 business days--or until September 15th (accounting for Labor Day)--to file an objection to the ballot title or signature count. 34 O.S.2021, § 8Paul Tay v. Michelle Diane Tilley Nichols and Michelle Jones, No. 120,657 (Okla. filed Aug. 29, 2022); (2) Michael D. Reynolds, as resident taxpayer and voter of the State of Oklahoma v. Brian Bingman, Oklahoma Secretary of State, in his Official Capacity, No. 120,680 (Okla. filed Sept. 7, 2022); (3) John Stotts, Karma Robinson, and Mary Chris Barth v. Michelle Diane Tilley Nichols and Michelle Anne Jones, No. 120,698 (Okla. filed Sept. 14, 2022); and (4) Jed Green, Oklahomans for Responsible Cannabis Action, v. Hon. John O'Connor, Attorney General of Oklahoma, No. 120,702 (Okla. Sept. 15, 2022). The Court denied relief in Tay and Reynolds on September 16th; and having shortened the time allowed for rehearing, this Court denied rehearing in Reynolds today. Today, the Court also denied the relief requested in Stotts and approved the Attorney General's rewritten ballot title, with the possibility of rehearing coming to a close at noon on Monday, September 26th. Lastly, the Court denied all relief requested in Green, with the possibility of rehearing coming to a close at noon on Monday, September 26th. With the statutory process winding down, the Court is now ready to address the merits of Petitioner's petition for writ of mandamus.

ANALYSIS

¶11 In order to obtain a writ of mandamus, Petitioners must show: (1) that they have a clear right to the relief sought, (2) that Respondents have a plain legal duty regarding the relief sought, (3) that Respondents refuse to perform that duty, (4) that the duty does not involve discretion, and (5) that Petitioners have no plain and adequate remedy in the ordinary course of the law. Maree v. Neuwirth, 2016 OK 62374 P.3d 750

¶12 Petitioners request is grounded in Article V, Section 3 of the Oklahoma Constitution. That measure states, in full:

§ 3. Petitions - Veto power - Elections - Time of taking effect - Style of bills - Duty of legislature.

Referendum petitions shall be filed with the Secretary of State not more than ninety (90) days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise.

The style of all bills shall be: "Be it Enacted By the People of the State of Oklahoma."

Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article.

Okla. Const. art. V, § 3 (emphasis added). Under the plain language of this provision, it is not clear that Petitioners have a right to put SQ820 on the ballot "at the next election held throughout the state." After all, the provision gives both the Legislature and the Governor the discretion to "order a special election for the express purpose of making such reference." But to avoid the force of the plain language, Petitioners point this Court to its own case law interpreting Article V, Section 3. Specifically, Petitioners point to language in Allen v. Burkhart, 1962 OK 279377 P.2d 821only for a date prior to the general election, at which time otherwise the submission becomes mandatory by operation of law and 'with or without any act on the part of the Governor', provided same is ready for submission." Allen, 1962 OK 279

¶13 But as Respondents point out, Article V, Section 3 authorizes the Legislature to "make suitable provisions for carrying into effect" its provisions. The Legislature has done so by enacting Title 34, a statutory framework that sets forth the requirements and time frames for the initiative process. Title 34, section 25 states in relevant part:

Whenever any measure shall be initiated by the people in the manner provided by law, . . . same shall be submitted to the people for their approval or rejection at the next regular election; provided, the Governor shall have power, in his discretion, to call a special election to vote upon such questions, or to designate the mandatory primary election as a special election for such purpose.

34 O.S.2021, § 2534 O.S.2021, §§ 8Allen v. Burkhart makes clear, submission at the general election only becomes mandatory "provided [the initiated measure] is ready for submission." Thus, Petitioners have no clear legal right and Respondents have no plain legal duty to put SQ820 on the November 8, 2022 general election ballot unless it is in full compliance with 34 O.S.2021, §§ 8

¶14 At this point in time, SQ820 is not in full compliance. There is still a possibility of rehearing in two of the protests, which prevents this Court from fully resolving those objections in compliance with 34 O.S.2021, § 834 O.S.2021, § 12

¶15 The statutory process cannot guarantee the availability of a particular election, as there are many factors to be considered--not the least of which is the verification and count of signatures and the opportunity for protest. Petitioners diligently prepared SQ820 for submission on the November 2022 general election ballot. Any delays to the process were caused by the Secretary of State's "learning curve" associated with use of the new software and by the filing of four statutorily allowed protests. See Resp'ts' Resp. ex. A, Bingman Aff. ¶ 7, at 2 (stating that the utilization of modern technology to verify and count signatures for the first time "required a learning curve to which the [Secretary of State's] Office adapted throughout the verification and counting process").

¶16 In conclusion, there is no way to mandate the inclusion of SQ820 on the November 2022 general election ballot. Thus, Petitioner's petition for writ of mandamus commanding the State Election Board to prepare and submit SQ820 to the people for their approval or rejection at the general election being held November 8, 2022, is hereby denied.

¶17 SQ820 will be voted upon by the people of Oklahoma, albeit either at the next general election following November 8, 2022, or at a special election set by the Governor or the Legislature. Okla. Const. art. V, § 3

ORIGINAL JURISDICTION PREVIOUSLY ASSUMED;
WRIT OF MANDAMUS DENIED.

DARBY, C.J.; KANE, V.C.J.; and KAUGER, WINCHESTER (by separate writing), EDMONDSON, COMBS, GURICH, and KUEHN, JJ., concur.

ROWE, J. (by separate writing), concurs in part and dissents in part.

FOOTNOTES

In re Initiative Pet. 434, State Question 820, No. 120,641 (Okla. Aug. 25, 2022)

 

 

WINCHESTER, J., concurring specially:

¶1 Today, September 21, 2022, this Court has approved the ballot title for Initiative Petition No. 434, State Question 820, known as Recreational Marijuana, and denied the Petitioners' requested writ of mandamus. On August 25, 2022, more than 70 days before the upcoming election, Mr. Paul Ziriax, Secretary of the Oklahoma State Election Board, filed his affidavit with the Supreme Court advising the Court of the ballot preparation process that must be accomplished by September 23, 2022, in order to comply with federal and state military and overseas voters laws. See Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 52 U.S.C. §§ 20301 to 20311, as amended by the Military and Overseas Voter Empowerment Act, Pub L. No. 111-84, Subtitle H, §§ 575- 589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act"); and Oklahoma's Uniform Military and Overseas Voters Act, 26 O.S. 2021, §§ 14-136.

¶2 Among his responsibilities as the Secretary of the State Election Board, Mr. Ziriax has the duty to comply with both Acts. For members of the United States Armed Forces requesting absentee ballots for the November 8, 2022, general election, the Acts require the transmission of such ballots by September 23, 2022, forty-five days prior to the election date. See 52 U.S.C. § 20302(a)(8)(A) (requiring absentee ballots be sent to absent uniformed service voters and overseas voters forty-five days before the election); and 26 O.S.2021, § 14-118

¶3 In his affidavit, Mr. Ziriax emphasizes:

"It should be noted that for security reasons, races and questions cannot be added to or deleted from an election database once it (the database) has been created. Any changes required to be made to an election database requires all the work associated with the database (including ballot proofing, testing, and printing) to be scrapped. Everything must start over from scratch. There are seventy-seven such databases that must be completed (one for each county) to conduct the General Election." 

Any deviation from this process puts Oklahoma in the possible position of jeopardizing the receipt of the votes of our service members.

¶4 I cannot disenfranchise our military, the very people who are working to protect and preserve our right to vote. I agree with the denial of Petitioners' request for the state question to be included on the November 8, 2022 ballot. State Question 820 can be rescheduled for another date.

 

 

ROWE, J., concurring in part, dissenting in part:

¶1 I concur with the majority that the requested writ of mandamus should be denied. I respectfully dissent, however, to the majority's suggestion that this process needed "more time to play out."

¶2 In my view, the Petition for Writ of Mandamus was dead on arrival. It was filed on August 22, 2022, only seven (7) days before the internal deadline noted by Secretary Ziriax for the State Question to be printed on the November ballot. At that point, there was not sufficient time--10 business days--for the public to file objections to the numerical sufficiency of the signatures or the rewritten ballot title, much less to complete the rest of statutory process for placing SQ 820 on the November ballot.

FOOTNOTES