OSCN Found Document:OKLAHOMA ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH v. TIMMONS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 OKLAHOMA ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH v. TIMMONS
2023 OK 101
Case Number: 121483
Decided: 10/24/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 101, __ P.3 __

 

 

THE OKLAHOMA ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, INC., a domestic not-for-profit corporation, THE BOARD OF TRUSTEES OF THE OKLAHOMA ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, INC., a domestic not-for-profit corporation, JIMMY NUNN, Bishop of the Oklahoma Annual Conference, VICTOR MCCULLOUGH, District Superintendent of the Heartland District of the Oklahoma Annual Conference, Petitioners,
v.
THE HONORABLE Aletia H. Timmons, Judge of the District Court of Oklahoma County, Respondent,
and
THE FIRST UNITED METHODIST CHURCH OF OKLAHOMA CITY, an incorporated religious association acting by and through its duly Elected Trustee, Real Party in Interest.

¶0 The Oklahoma Annual Conference of the United Methodist Church applied for writs of mandamus and prohibition against Respondent, after a grant of mandatory injunctive relief. This Court previously granted writs of mandamus and prohibition by Order on October 5, 2023. We hold the doctrine of church autonomy applies and remand with instructions to dismiss.

WRITS OF MANDAMUS AND PROHIBITION PREVIOUSLY GRANTED;
CASE REMANDED TO THE DISTRICT COURT OF OKLAHOMA COUNTY
WITH INSTRUCTIONS TO DISMISS

Ross A. Plourde, Kate N. Dodoo, Peyton S. Howell, McAfee & Taft, Oklahoma City, Oklahoma, for Petitioners

Cheryl Plaxico, Plaxico Law Firm, P.L.L.C., Cara S. Nicklas, Ashley Ray, McAlister, McAlister & Nicklas, P.L.L.C., Oklahoma City, Oklahoma, for Real Party in Interest

KUEHN, J.:

¶1 The First United Methodist Church of Oklahoma City (First Church) is affiliated with the Oklahoma Annual Conference of the United Methodist Church (UMC). First Church wished to undergo the process of disaffiliation from UMC while retaining its real property, as provided in Paragraph 2553 of the United Methodist Book of Discipline. First Church ultimately sued UMC in pursuit of this goal, and Respondent granted it injunctive relief. We conclude that this remedy violates the doctrine of church autonomy, and Respondent lacked subject matter jurisdiction to hear the case. For this reason, we granted the writs of mandamus and prohibition by Order on October 5, 2023.

Facts and Procedural History

The UMC Disaffiliation Process

¶2 The General Conference is the United Methodist Church's (UMC) principal governing body. The General Conference enacts the Book of Discipline, UMC's governing document. The Book of Discipline includes both matters of doctrine and policy, and procedures for implementing them. Each church joining UMC agrees to abide by the requirements and provisions of the Book of Discipline. Individual churches have no ability to change those provisions. UMC has subordinate organizational levels. These include regional districts. The Oklahoma Annual Conference consists of clergy serving within Oklahoma along with an equal number of lay members elected by local churches. The General Conference also has a Judicial Council which decides disputes and controversies concerning doctrine and Book of Discipline provisions.

¶3 The general rule according to UMC's Book of Discipline is that a church may disaffiliate, but UMC retains the associated church property. In 2019 UMC enacted Paragraph 2553 of the Book of Discipline, an exception to that general rule. It provides an opportunity for congregations who disagree with UMC's doctrine related to the practice of homosexuality or the ordination or marriage of homosexuals, as provided in the Book of Discipline, to disaffiliate and keep their property. The process begins with notice to the UMC and an initial vote by the congregation (called a church conference), conducted according to Book of Discipline provisions, in which two thirds of the congregation must vote to disaffiliate. As allowed by the terms of Paragraph 2553, the Oklahoma Annual Conference Board of Trustees provided that a congregation may take a church conference vote only once in a one-year period; however, the district superintendent has discretion to call a second church conference vote within the year. After the church conference vote, a disaffiliation agreement along with specific materials must be compiled and presented to support formal approval of disaffiliation by the Oklahoma Annual Conference. To facilitate this requirement the Oklahoma Bishop scheduled Annual Conference meetings in October 2022, April 2023, and October 2023. To accommodate the time necessary to prepare the agreement and materials, the Annual Conference required any church wishing to be considered for disaffiliation at the October 2023 meeting to hold its church conference vote by September 6, 2023. Finally, any congregation wishing to disaffiliate by the means of Paragraph 2553 must complete the entire process before December 31, 2023.

First Church Request to Disaffiliate 

¶4 In late 2022, First Church told UMC it wanted to begin the disaffiliation process under Paragraph 2553. UMC scheduled the First Church conference vote on disaffiliation for January 23, 2023. Subsequently UMC received information which caused it to question whether First Church was a viable institution. On January 17, UMC postponed the January 23 vote until it conducted a viability study (CCV), as provided for in the Book of Discipline. The CCV process was delayed. On February 2, First Church held an informal church conference vote to disaffiliate. On May 5, First Church asked UMC to cancel the CCV. On May 16, First Church sent UMC a demand letter, asking for a response by May 19 and for UMC to schedule a formal church conference vote. UMC did not respond.

First Church District Court Litigation

¶5 On June 1, while completion of the viability study remained pending, First Church sued UMC in Oklahoma County District Court for injunctive relief, declaratory judgment, and damages. That same day Respondent issued a temporary restraining order prohibiting continuation of the CCV process and preserving the status quo as to the church property. On June 16 UMC filed a motion to dismiss for lack of subject matter jurisdiction. This was denied after a hearing on July 7, as was UMC's immediate motion to stay that decision pending appeal. Immediately after concluding the hearing on the motion to dismiss, Respondent began the hearing on First Church's request for an injunction on July 7, and this second hearing continued on July 14 and 17. On July 25, Respondent granted a temporary mandatory injunction, ordering: (1) First Church was not required to complete the CCV process imposed by UMC; (2) UMC must recognize First Church's February 5 internal church conference vote to disaffiliate; (3) UMC must call a special Annual Conference on or before August 6, 2023, to vote on whether to approve First Church's disaffiliation agreement with the UMC Board of Trustees, and the delegates to that conference shall be the same membership as the delegates who voted on disaffiliation agreements at the April 22, 2023 special Annual Conference; and 4) the temporary restraining order of June 1 remained in effect.

¶6 UMC did not appeal this ruling, although it could have done so as an interlocutory order appealable by right under Supreme Court Rule 1.60(c) and Title 12, Sections 952(b)(2) and 993(A)(2). Instead, on July 26, UMC filed this application for a writ, asking this Court to prohibit the District Court from enforcing its July 25 Order, and to order the court to dismiss First Church's suit for lack of subject matter jurisdiction. On August 2 this Court stayed the injunction pending resolution of this writ. Due to the stay, UMC did not hold the court ordered Annual Conference.

¶7 First Church has suggested that UMC's filing in this Court was untimely under Rule 1.191(i), Oklahoma Supreme Court Rules, 12 O.S. ch. 15, App. 1. However, that Rule does not apply. Rule 1.191(i) requires a party seeking a stay of a proceeding to file its application at least ten days before the proceeding it wants to stay is set in the district court. The rule applies where the petitioner wants to prevent a district court from conducting a hearing; it is filed before the proceeding happens. But here, UMC asked this Court to stay an order Respondent had already issued, and to prevent Respondent from enforcing its order. That is, UMC wanted to stop enforcement of a ruling that had already happened -- and filed that request within ten days of the hearing. UMC's request was not untimely.

Standard of Review

¶8 Petitioner seeks a writ of mandamus and/or prohibition. For a writ of mandamus, Petitioner must show (1) it has a clear legal right to the relief sought; (2) Respondent has a plain legal duty regarding the relief; (3) Respondent has refused to perform the duty; (4) the duty does not involve an exercise of discretion; and (5) Petitioner has no plain and adequate remedy in the ordinary course of the law. Nichols v. Ziriax, 2022 OK 76, ¶ 11, 518 P.3d 883, 887. For a writ of prohibition, a petitioner must show (1) an exercise of judicial or quasi-judicial power; (2) which is unauthorized by law; (3) and which will result in injury for which there is no other adequate remedy. Maree v. Neuwirth, 2016 OK 62, ¶ 6, 374 P.3d 750, 752. Petitioners have shown both a clear legal right to the relief sought, that Respondent refused to perform its duty, and an exercise of unauthorized judicial power, and have no remedy other than an extraordinary writ.

Church Autonomy Doctrine Applies

¶9 The United States Supreme Court established long ago that church authority governs internal ecclesiastical disputes, to avoid the courts becoming entangled in religious doctrine. Watson v. Jones, 80 U.S. 679, 727 (1871). Under the church autonomy doctrine, also known as the ecclesiastical abstention doctrine, courts have no subject matter jurisdiction over matters of "theological controversy, church discipline, [or] ecclesiastical government...." Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 714 (1976). Where ecclesiastical decisions are at issue, constitutional due process and "secular notions of 'fundamental fairness' or impermissible objectives" are irrelevant. Id. at 714-15. This affords churches the freedom to decide their own government, faith and doctrine. Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94, 116 (1952). This is considerably broader than questions of who may preach, the content of sermons, or how services are conducted. "Government action that interferes with this autonomy or risks judicial entanglement with a church's conclusions regarding its own rules, customs, or laws is therefore prohibited by the First Amendment." In re Lubbock, 624 S.W.3d 506, 513 (Tex.), cert. denied sub nom. Guerrero v. Diocese of Lubbock, 142 S. Ct. 434 (2021). Church autonomy protects and gives force to the First Amendment freedom of religion clause.

¶10 Where a dispute involves only narrow property issues, without any reference to religious doctrine and practice, courts may apply neutral principles of law to review language of deeds, terms of charters, church provisions concerning property ownership, and state property and trust statutes. Jones v. Wolf, 443 U.S. 595, 602-03 (1979). However, a court may not, under the neutral principles approach, decide for itself what any governing church provisions mean; the review must be strictly secular, and courts must defer to the church leadership's resolution of any religious or doctrinal question. Id. at 604; Lubbock, 624 S.W.3d at 513. Church autonomy will apply, and a case must be dismissed, where potentially secular issues are inextricably intertwined with ecclesiastical decisions. Lubbock, 624 S.W.3d at 514.

¶11 This Court has applied the church autonomy doctrine where the issues involved ecclesiastical decisions or doctrine and the plaintiffs were subject to church authority. See, e.g., Fowler v. Bailey, 1992 OK 160, ¶ 7, 844 P.2d 141, 144 (court cannot reinstate former church members after expulsion, which is within church purview; as plaintiffs were expelled from church, they had no standing in church property dispute); Hadnot v. Shaw, 1992 OK 21, ¶¶ 28-29, 826 P.2d 978, 987 (discipline during expulsion process was within church's ecclesiastical authority); Guinn v. Church of Christ, 1989 OK 8, ¶ 23, 775 P.2d 766, 775 (church autonomy applied to church's disciplinary acts against plaintiff until she resigned her membership). In Doe v. First Presbyterian Church U.S.A. of Tulsa, we ultimately found that the church autonomy doctrine did not bar the plaintiff's suit because the plaintiff had not subjected himself to church authority. Doe, 2017 OK 106, ¶ 23, 421 P.3d 284, 290. We refused a request to require a religious denomination to provide marital counseling or face civil damages, as decisions of what ministerial services to provide are ecclesiastical. Bladen v. First Presbyterian Church of Sallisaw, 1993 OK 105, ¶ 28, 857 P.2d 789, 797.

¶12 At issue here is whether deciding the merits of the claims of First Church requires the courts to interpret the Book of Discipline and Paragraph 2553. As the Book of Discipline is a governing church document, its interpretation is an ecclesiastical issue. All parties agree that the Book of Discipline is UMC's governing document. They also agree that Paragraph 2553 was specially adopted to address a specific ecclesiastical matter. First Church frames its lawsuit as a property issue; however, it chose to disaffiliate under the rules of church doctrine outlined in Paragraph 2553 to claim the property. First Church does not have a property dispute at this juncture, and it cannot claim to have a dispute at this juncture without confronting the doctrinal issue explicitly raised by the church-created procedural language. First Church also claims the UMC has violated its own procedures outlined in the Book of Discipline. But the only way for the courts to decide that question is, again, to interpret those internal church procedures. Under the church autonomy doctrine, courts cannot -- and should not -- do that.

¶13 Here, Respondent did that. Respondent rejected UMC's explanation of the Book of Discipline and its governing document with its own interpretation to achieve a "fair" result. This is not the role of the courts where ecclesiastical doctrine is involved. Milivojevich, 426 U.S. at 714. And Respondent's rulings clearly show that it concluded that First Church's claims based on the process of Paragraph 2553 disaffiliation cannot be decided without interpreting the Book of Discipline. First Church's claims are thus inextricably intertwined with church doctrine, and church autonomy applies.

The Church Autonomy Doctrine Bars Subject Matter Jurisdiction

¶14 This is a subject matter jurisdiction issue. Before 2017, the United States Supreme Court, this Court, and other jurisdictions treated church autonomy as defeating subject matter jurisdiction. When church autonomy applied, the courts could not hear a case at all. In Doe this Court, on rehearing, determined that church autonomy was an affirmative defense rather than a question of subject matter jurisdiction. Doe, 2017 OK 106, ¶ 24, 421 P.3d at 291. In doing so we relied on a United States Supreme Court case, Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171 (2012), which concerned the ministerial exception to federal statutory employment law. In a footnote, Hosanna-Tabor had concluded that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim", in the context of employment suits. Id. at 195 n.4. Hosanna-Tabor did not discuss the church autonomy doctrine.

¶15 The Doe majority treated the ministerial exception and the church autonomy doctrine as the same concept. However, they differ significantly in scope and purpose, and should be treated differently. The church autonomy doctrine is much older than the ministerial exception. Watson recognized the church autonomy doctrine as a matter not within civil courts' jurisdiction in 1871. Watson, 80 U.S. at 733. By contrast, Hosanna--Tabor noted that the ministerial exception has been recognized since Title VII employment discrimination laws were passed in 1964. Hosanna-Tabor, 565 U.S. at 188 (citing federal Courts of Appeals cases from the 1980s onwards). The ministerial exception prevents courts from hearing employment challenges to church decisions hiring and firing ministers; any State attempt to interfere with a church's internal governance by imposing an unwanted minister or deciding who should minister to a particular church's congregation violates both the Free Exercise Clause and the Establishment Clause. Id. at 189. The exception is narrowly tailored to federal statutory employment claims. By contrast, the church autonomy doctrine is much broader, and bars courts from exercising subject matter jurisdiction over disputes involving faith, church discipline, and church government. Watson, 80 U.S. at 729. Watson explained that this protects "that full, entire, and practical freedom for all forms of religious belief and practice which lies at the foundation of our political principles." Id. at 728. And in a recent case, the United States Supreme Court described its recognition of the ministerial exception in Hosanna-Tabor as arising out of the broad principles outlined in Watson, Kedroff, and Milivojevich. Our Lady of Guadalupe School v. Morrissey-Berru, 140 S.Ct. 2049, 2061 (2020).

¶16 After consideration, we conclude that the Doe majority inadvertently conflated the church autonomy doctrine and the ministerial exception. Doe, 2017 OK 106 at ¶ 6, 421 P.3d at 292-93 (Combs, C.J. dissenting). As Justice Combs explained in dissent, "[T]he Hosanna--Tabor Court did not extend its determination on subject matter jurisdiction beyond the ministerial exception to the broader church autonomy doctrine." Doe, 2017 OK 106 at ¶ 7, 421 P.3d at 293 (Combs, C.J. dissenting). This Court's previous cases (including those discussed above, except Doe) all treat church autonomy as barring subject matter jurisdiction. See Doe, 2017 OK 106 at ¶ 5, 421 P.3d at 292 (Combs, C.J. dissenting).[1]

¶17 But Doe's ultimate result -- that church autonomy did not apply and the case could proceed below -- does not turn on its misapplication of Hosanna-Tabor. The key to Doe is its oft-repeated conclusion that Doe himself never joined the First Presbyterian Church of Tulsa (as all parties agreed), and that consequently he did not subject himself to its ecclesiastical jurisdiction. That conclusion, under the facts presented, was unremarkable according to this Court's and the United States Supreme Court's existing law. Whether the doctrine is an affirmative defense or bars subject matter jurisdiction wasn't relevant to our controlling conclusion.

¶18 Consequently, we take this opportunity to clarify the procedural posture of the church autonomy doctrine. We return to our settled jurisprudence and reaffirm that church autonomy is a bar to subject matter jurisdiction. To this end we overrule the narrow ruling in Doe at paragraphs 24, 25 and 26, which found that church autonomy is an affirmative defense. Doe, 2017 OK 106, ¶¶ 24-26, 421 P.3d at 290-91. The remainder of the Doe opinion, including its holding reversing the district court's judgment and remanding the case, is unchanged.

Conclusion

¶19 For a writ of prohibition, UMC must show that Respondent has exercised judicial power unauthorized by law, and that exercise has resulted in injury for which there is no other adequate remedy. Maree, 2016 OK 62, ¶ 6, 374 P.3d at 752. For a writ of mandamus, UMC must show it has a clear legal right to the relief sought, Respondent refuses to perform a plain legal duty not involving an exercise of discretion regarding the relief, and UMC has no adequate remedy. Nichols, 2022 OK 76, ¶ 11, 518 P.3d at 887. A mandatory injunction, rather than preserving the status quo, "is an extraordinary remedial process that commands the performance of some positive act." Owens v. Zumwalt, 2022 OK 14, ¶ 7, 503 P.3d 1211, 1214.

¶20 In ordering the temporary mandatory injunction at First Church's request, Respondent found that First Church was likely to succeed on the merits and would be irreparably harmed if the injunction were denied, that the harm First Church would incur outweighed any injury to UMC under the injunction, and that the injunction was in the public interest. Owens, 2022 OK 14, ¶ 8, 503 P.3d at 1214; Dowell v. Pletcher, 2013 OK 50, ¶ 7, 304 P.3d 457, 460. In so finding, Respondent waded into the ecclesiastical realm and fashioned a remedy that is on its face contrary to the Book of Discipline procedures. This violated church autonomy.

¶21 UMC could have appealed those decisions but chose to file writs instead. Under these circumstances this was appropriate. Respondent had no subject matter jurisdiction. Respondent should neither have held the hearings on First Church's claims, nor issued the temporary mandatory injunction. In doing so, Respondent exercised judicial power unauthorized by law. In refusing to grant UMC's motions to dismiss for lack of subject matter jurisdiction, Respondent refused to perform a plain legal duty not involving the exercise of discretion. Consequently, this Court granted the writs of mandamus and prohibition. The case is remanded with instructions to dismiss.

WRITS OF MANDAMUS AND PROHIBITION PREVIOUSLY GRANTED;
CASE REMANDED TO THE DISTRICT COURT OF OKLAHOMA COUNTY 
WITH INSTRUCTIONS TO DISMISS

CONCUR: KANE, C.J., Rowe, V.C.J., Kauger, Winchester, Combs, Darby and Kuehn, JJ., Rowland, S.J. and Swinton, S.J.

RECUSED: Edmondson and Gurich, JJ.

Kane, C.J., with whom Kauger, J., joins, concurring. "While the Church autonomy doctrine deprived the Court of subject matter jurisdiction under these facts, Courts continue to have subject matter jurisdiction to resolve church property disputes, and they may review provisions of the Book of Discipline concerning the ownership of property provided the references do not speak to religious doctrine or practice. See Jones v. Wolf, 443 U.S. 595, 603 (1979)."

FOOTNOTES

[1] As Justice Combs discussed, cases from other jurisdictions, decided between 2012 and 2017, reached the same conclusion. Id. at ¶¶ 8-11, 421 P.3d at 293-94 (Combs, C.J., dissenting) (including cases from Tennessee, South Dakota, Kentucky, Florida, and the United States District Court for the District of Columbia); see also Lubbock, 624 S.W.3d at 516 (in 2021, Texas Supreme Court held that where church autonomy applies, courts lack jurisdiction).

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2023 OK 102, 
OKLAHOMA ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH v. TIMMONS
Discussed at Length

 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 8, 775 P.2d 766, 60 OBJ 144, 
Guinn v. Church of Christ of Collinsville
Discussed

 
1992 OK 21, 826 P.2d 978, 63 OBJ 442, 
Hadnot v. Shaw
Discussed

 
1992 OK 160, 844 P.2d 141, 63 OBJ 3648, 
Fowler v. Bailey
Discussed

 
1993 OK 105, 857 P.2d 789, 64 OBJ 2320, 
Bladen v. First Presbyterian Church of Sallisaw
Discussed

 
2013 OK 50, 304 P.3d 457, 
DOWELL v. PLETCHER
Discussed

 
2016 OK 62, 374 P.3d 750, 
MAREE v. NEUWIRTH
Discussed at Length

 
2017 OK 106, 421 P.3d 284, 
DOE v. THE FIRST PRESBYTERIAN CHURCH U.S.A. OF TULSA
Discussed at Length

 
2022 OK 14, 503 P.3 1211, 
OWENS v. ZUMWALT
Discussed

 
2022 OK 76, 518 P.3d 883, 
NICHOLS v. ZIRIAX
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA